**IN THE COURT OF APPEALS OF IOWA**

No. 22-0546
Filed June 15, 2022

**IN THE INTEREST OF A.G. and A.T.,**
**Minor Children,**

**R.G.-F., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Mahaska County, Rose Anne

Mefford, District Associate Judge.

　　　A mother appeals the termination of her parental rights to two children.

**AFFIRMED**.

　　　Lynnette M. Lindgren of Faulkner, Broerman & Lindgren, Oskaloosa, for

appellant mother.

　　　Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

　　　Nicole Steddom, Oskaloosa, attorney and guardian ad litem for minor

children.

　　　Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to two children. The record contains clear and convincing evidence to support the statutory ground for termination relied on by the juvenile court, termination is in the best interest of the children, and a permissive exception should not be applied to preclude termination. We further conclude that the Iowa Department of Human Services (DHS) made reasonable efforts to reunite the family. Finally, an extension of time for reunification efforts is not warranted. We affirm the juvenile court.

## I. Background Facts & Proceedings

The mother and her two children, A.T., age ten, and A.G., age eight, came to the attention of DHS in December 2020 following the mother's arrest for operating while intoxicated, second offense, and child endangerment. The arrest occurred due to the mother driving under the influence of methamphetamine, amphetamines, and ecstasy. A.T. was in the car at the time of the mother's arrest. There were also concerns of methamphetamine use by the mother at the family home.

The children were removed from the mother by an ex parte removal order on December 8. A.T. was initially placed with a maternal uncle but was moved to his maternal grandmother's home shortly afterward.[1] A.G., who lived with his father pursuant to a district court custody order,[2] remained at his father's home

---

[1] A.T.'s father was incarcerated in Arizona during these proceedings. His parental rights were terminated at the same time as the mother's. He does not appeal.

[2] Pursuant to the court order, the mother and A.G.'s father shared joint legal custody. A.G.'s father has physical care, while the mother was awarded visits with A.G. every other weekend.

under the supervision of DHS. The children have remained in these respective placements for the entirety of the case. The children were adjudicated as children-in-need-of-assistance (CINA) on January 5, 2021, pursuant to Iowa Code section 232.6(c)(2) and (n) (2020). A depositional order was filed on February 23, 2021.

The mother continues to battle substance abuse. Methamphetamine appears to be the drug used by the mother most often. The mother attended two inpatient and two outpatient treatment programs, successfully graduating from the second outpatient program. While she contends her last drug use was in July 2021, she informed her drug counselor that she relapsed on methamphetamine and marijuana in December, the same month as the first day of the termination hearing. A family support worker testified that the mother was exhibiting behavioral indicators of drug use in December during visits with the children. The mother also refused a drug test requested by DHS the same month.

The mother struggles with mental illness. A psychological evaluation resulted in the mother being diagnosed with several mental illnesses, including generalized anxiety disorder, bipolar disorder, attention-deficit/hyperactivity disorder, narcissistic personality disorder, and other trauma-and-stressor-related disorders.

The mother exhibited erratic behavior during these proceedings. She was discharged from her first inpatient treatment facility after she assaulted a staff member. The incident resulted in the mother's conviction for assault. In May 2021, the mother became upset at a bank and threatened a teller. On another occasion, she smashed a snow globe and drank the glitter water. The DHS caseworker assigned to the case testified that there were "lots of reports" of concerning

behavior involving the mother being unable to manage stressors or her behavior. The mother struggled to consistently attend therapy. She avoided therapy from June through August. And while the mother appears to have consistently attended therapy sessions since September, she has not regularly attended her medication management appointments.

Concerns remain about the mother's new husband. The mother informed providers that he was abusive to her in July. She informed a provider that he forced her to use methamphetamine with him. The couple married in August 2021. While the mother's husband made some progress on his own substance-abuse issues, he admitted to relapsing in November. He also accompanied the mother at every therapy appointment she attended, highlighting DHS concerns about his control over the mother. The mother retracted her statements at the time of the termination hearing concerning the prior reported abuse.

The mother has weekly supervised visits with the two children. Interactions between the mother and the children are generally positive, and the children are happy to see their mother. However, caseworkers expressed concern over the mother's tendency to prioritize her husband over the children and her lack of a bond with A.G. The mother received an additional two hours every other week with A.T. upon her request, but she did not request additional time with A.G.

The State filed a petition to terminate the mother's parental rights on December 1, 2021. The petition was amended on December 20. The termination hearing occurred over three days.[3] On March 11, 2022, the juvenile court

---

[3] The second day of the termination ended early due to concerns that the mother was under the influence of a controlled substance while testifying.

terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (2021). The mother appeals.

## II. Standard of Review

"We review termination proceedings de novo. Although we are not bound by them, we give weight to the trial court's findings of facts, especially when considering the credibility of witnesses. The primary interest in termination proceedings is the best interests of the child[ren]." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (internal citations omitted). "To support termination of parental rights, the State must establish the grounds for termination under Iowa Code section 232.116 by clear and convincing evidence. 'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* (internal citations omitted).

## III. Discussion

The mother raises several claims on appeal. First, she challenges the sufficiency of the evidence supporting the grounds for termination, specifically whether the children could safely be returned home. She also claims termination was not in the children's best interest and that the court should have declined to terminate based on statutory exceptions under Iowa Code section 232.116(3). She also contends DHS did not make reasonable efforts to reunite the children with her. Finally, she requests an additional six months to work towards reunification with the children.

### A. Sufficiency of Evidence

The mother challenges the sufficiency of the evidence supporting the grounds for termination under section 232.116(1)(f).[4]  The mother only challenges the last element—whether the children could be returned to her custody at the present time.  "[A] child cannot be returned to the parent under Iowa Code section 232.102 if by doing so the child would be exposed to any harm amounting to a new [CINA] adjudication."  *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).  Additionally, "at the present time" means at the time of the termination hearing.[5]  *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

---

[4] Section 232.116(1)(f) provides for termination of parental rights when:
>    (1) The child is four years of age or older.
>    (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96
>    (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
>    (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[5] The mother also contends the removal of A.G. from her care was improper because an administrative decision, which is not in the record before us, found insufficient evidence to support a founded child abuse determination for A.G.  In particular, she alleges A.G. was not exposed to her drug use because he was in the care of his father.  However, the proper avenue for challenging A.G.'s removal would be an appeal following the entry of the dispositional order.  *See, e.g.*, *In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("[W]e need not decide the validity of the ex parte removal order or the order entered after hearing because this issue is moot. . . .  Any error committed in granting the temporary ex parte order cannot now be remedied.  We cannot go back in time and restore custody based on alleged errors in the initial removal order.").  Moreover, our review is limited to considering whether the child can be safely returned to the mother's custody at the time of the termination hearing, not whether the child was safe at the time of removal.  Thus, we do not consider the mother's claim concerning A.G's removal.

The juvenile court noted several factors indicating that the children could not safely be returned to the mother's custody, including the mother's substance abuse, ongoing mental-health struggles, and the domestic violence and control issues involving her husband. We agree.

The mother attempted four different substance-abuse treatments—two inpatient, two outpatient—successfully completing one of the outpatient treatments. However, despite the mother's claim at the termination hearing that her last drug use was in July, she admitted to using methamphetamine in December. This coincides with testimony from a family support worker, whom the juvenile court found credible, that she saw behavioral indicators of drug use during two visits in December. It also overlaps with the husband's relapse in November. The mother insisted at trial that she does not have a substance-abuse issue. The juvenile court found the mother was not credible. *See C.B.*, 611 N.W.2d at 492 (noting that we give weight to the juvenile court's credibility determinations). And the mother has never taken a hair follicle drug test, which generally detects drug use within a longer period than urine-analysis tests. When DHS requested a hair test in December, the mother went to great lengths in her attempt to obtain a urine analysis instead, ultimately resulting in her missing that drug test altogether. The mother's substance abuse remains an issue preventing the children from being safely placed in the mother's custody at the time of the termination hearing.

The mother has not demonstrated stability in her mental health. The DHS caseworker testified that there were "lots of reports" about erratic behavior by the mother, generally due to an inability to manage stressors and her emotions. The mother struggled to consistently attend therapy until September and has had to

adjust her medications due to erratic behavior as recently as following the second day of the termination hearing. She also has a history of inconsistent attendance for her medication management appointments. That behavior, coupled with the mother's belief that she will be able to cease mental health medication, is particularly concerning given the mother's own testimony that her erratic and violent outbursts, as well as her drug use, tend to occur when she is not taking her medication.

Finally, the mother married in August despite DHS concerns about domestic abuse, controlling behavior, and the mother's tendency to prioritize her husband over her children. The mother's decision to marry this individual despite her own testimony indicating she knew he was an impediment to regaining custody of the children further supports a determination that the children cannot safely be returned to the mother's custody at the present time.

## B.    Best Interests of the Children

The mother claims termination is not in the children's best interest because there are less restrictive options available and based on the close bond the children share with each other. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

We acknowledge a preference to keep siblings together. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). "However, this preference is not absolute. Our ultimate concern is the best interests of the child." *Id.* Here, a return to parental care would expose both children to their mother's substance abuse, erratic and

aggressive behavior, and domestically violent household. Additionally, both A.G.'s and A.T.'s placements indicate support for the siblings' relationship. On this record, the sibling relationship does not preclude termination.

As part of her best-interest argument, the mother also contends termination is unnecessary because A.G. was residing with his father pursuant to a district court order. She claims the juvenile court could have continued A.G.'s placement with his father without terminating her parental rights. She points to the uncontested evidence at trial that she has not interfered with A.G.'s placement with his father. However, the DHS caseworker assigned to the family indicated that the district court's custody order would be insufficient to protect A.G. because the mother is manipulative and it would be difficult for A.G.'s father to discern when he would be safe in the mother's care. The caseworker also testified that visits would not be safe given the mother's struggles with sobriety. Given the concerns regarding the mother's sobriety and erratic behavior, we agree that ongoing access to A.G. by the mother is not in A.G.'s best interest.

The mother's claim that A.T. could be placed under a guardianship with his grandmother, also argued as part of her best-interest claim, fails for similar reasons.[6] The mother and A.T.'s grandmother have a tumultuous relationship,

---

[6] The guardianship issue was not raised before the juvenile court. We nonetheless address the merits. *See In re D.K. Jr.*, No. 12-2162, 2013 WL 1751464, at *4 n.1 (Iowa Ct. App. Apr. 24, 2013) ("Ordinarily, 'we will not speculate on the arguments [appellant] might have made and then search for legal authority and comb the record for facts to support such arguments.' . . . Given the incredible stake of innocent children in this action, we hesitate to find the mother failed to preserve error and will address the best interests of the children" (citation omitted)).

often times resulting in a lack of communication between the two. The mother refused to allow the grandmother to supervise visits between herself and A.T.

Guardianships are not a legally-preferred alternative to termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). This is true, at least in part, because guardianships by their nature require continuing court involvement and can be modified, causing the child some amount of ongoing uncertainty and instability. *See id.* We conclude that given the age of the child, the length of time the child has been removed, the mother's lack of substantial progress toward reunification, and the availability of other viable permanency options, a guardianship is not appropriate. Termination is the best option to give A.T. the safe, stable home he deserves. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (identifying the "child's safety and his or her need for a permanent home as the defining elements in a child's best interests" (citation omitted)).

Finally, we note that both A.G.'s stepmother and A.T.'s grandmother expressed a willingness to adopt. *See* Iowa Code § 232.116(2)(b). A.G. is integrated with his family. A.T. has also grown close to his oldest brother, who also lives with their grandmother.[7] Termination is in the children's best interests.

## C. Permissive Exceptions

The mother asserts the juvenile court should have declined to terminate her parental rights based on the closeness of the bond she shares with her children. A court may opt not to terminate parental rights when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the

---

[7] That child has reached the age of majority and is not a part of these proceedings.

time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c). The grounds in section 232.116(3) "are permissive, not mandatory." *A.M.*, 843 N.W.2d at 113 (quoting *In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011)).

It is uncontested that the children love their mother and are excited to see her during visits. But love is not enough. *In re T.A.H.*, No. 01-258, 2002 WL 181051, at *2 (Iowa Ct. App. Feb. 6, 2002). Even assuming the existence of a bond between the mother and both children, there is a lack of evidence that termination would be detrimental to the children.[8] We, like the juvenile court, decline to apply this permissive exception.

### D. Reasonable Efforts

The mother claims DHS failed to make reasonable efforts to return the children to her care because she did not obtain increased visitation with her children. Iowa requires the DHS to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7).

Reasonable efforts "includes visitation designed to facilitate reunification while providing adequate protection for the child." *C.B.*, 611 N.W.2d at 493. The nature of DHS's efforts depends upon the best interests of the child. *In re L.T.*, 924 N.W.2d 521, 530 (Iowa 2019). The State's duty to make reasonable efforts

---

[8] We note that the mother lacks a significant bond with A.G. in particular. For example, the mother requested additional time for visits with A.T., but did not request a similar increase in visitation with A.G. According to A.G.'s father, the child and mother have a good relationship, but it has grown weaker during the CINA proceedings. A.G. tends to be more excited to see his brother than his mother during visits. And A.G.'s father testified that the mother only calls A.G. about once a week for a short period, during which the mother is frequently distracted.

encompasses "a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996).

> Visitation, however, cannot be considered in a vacuum. It is only one element in what is often a comprehensive, interdependent approach to reunification. If services directed at removing the risk or danger responsible for a limited visitation scheme have failed its objective, increased visitation would most likely not be in the child's best interests.

*Id.*

"It is a 'parent's responsibility to demand services if they are not offered prior to the termination hearing.'" *In re A.G.*, No. 21-0037, 2021 WL 3074505, at *2 (Iowa Ct. App. July 21, 2021) (quoting *In re H.L.B.R.*, 567 N.W.2d 675, 679 (Iowa Ct. App. 1997)). Such a demand is "properly raised at removal, when the case permanency plan is entered, or at later review hearings." *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) (citation and quotations omitted). "Where a parent 'fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding.'" *Id.* (quoting *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002)).

On this record, we determine DHS made reasonable efforts to increase the mother's visitation. DHS informed the mother that the children's grandmother or a family friend could supervise visits, allowing more visits to occur. The mother declined to use the children's grandmother as an option even though she was already approved to supervise visits. And the mother stopped using the family friend after three visits. The DHS also increased the mother's visits with A.T. in September. And visitation is only one element in the approach to reunification with

the mother, and cannot be considered in isolation. Given the mother's substance abuse and mental-health issues, DHS made reasonable efforts to expand visitation as part of reunification efforts for the family.

### E.    Extension

The mother contends the juvenile court should have granted a six-month extension for her to demonstrate further improvement and regain custody of the children. Juvenile courts may grant six-month extensions upon a "determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *see also In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). Importantly, "[w]hile we recognize the law requires a 'full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,' Iowa has built this patience into the statutory scheme of Iowa Code chapter 232." *C.B.*, 611 N.W.2d at 494 (quoting *In re D.A., Jr.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993)). Thus, "[o]nce the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *C.B.*, 611 N.W.2d at 495.

The juvenile court determined the mother would not have resolved the issues leading to termination in six months. We agree. The mother relapsed as recently as the month the termination proceedings commenced. Her husband also recently relapsed. Despite concerns over the domestically-violent relationship, the mother married this individual in August. While it appears the mother has made some minimal progress with her mental health, she lacks insight into her need for mental health medications, despite her own admission that a lack of medication was a cause of her erratic and sometimes violent behavior. Her plan to cease her

medication bodes poorly for her future mental health and the safety of the children. The record is void of evidence that the need for removal of the children from the children's home will no longer exist at the end of the additional six-month period. An extension of time is not warranted.

**AFFIRMED.**